Please be seated. Could the court call the next case, please? Before we start, Justice Holdridge is the third member of this panel. He's not able to be here today, so he will be listening to the tapes of the argument and will be considering with us what the decision should be. So he will be a full participant in this appeal. Okay? Mr. Neville? Good afternoon. My name, for the record, is Ron Neville, and I represent the appellant plaintiff. Our position in this case is that the conduct complained of in the complaint, even though performed by an accountant, had nothing to do with accounting. And we believe this court should hold as a matter of law that the conduct complained of does not amount to professional services within the meaning of the subject statute 13-214. Alternatively, at a minimum, we believe that a question of fact has been created through the evidence presented to the lower court, and that at a minimum the case should be reversed because of that fact, that a question of fact does, in fact, exist. We take issue with the plaintiff's brief, part of the defendant's brief, for the reason that we believe their summation of the facts is incomplete and that it was designed merely to garner facts that would demonstrate notice to the plaintiff that he had a claim and that he did not file that claim within two years. We have admitted before the lower court and in our briefs before this court that he did not file the complaint within two years, but we maintain that he did file it within five years and that the five-year statute controls. We urge this court to review the statement of facts in our brief because we think it is complete and appropriate. A second issue we take with the defendant's approach is that their reading of our complaint. They consistently and constantly argue that our complaint alleges only professional accounting services performed by the defendant, Leckie. We submit that a reasonable reading of the complaint, and we've outlined that all in the brief, shows that while we did allege that some professional accounting services were performed in the nature of preparing tax returns, that the remainder of our complaint, specifically paragraphs 9 and 10, demonstrate that we're not talking about accounting here. We're talking about a real estate transaction and lies that Mr. Leckie, misrepresentations that Mr. Leckie made to our client and others regarding the nature of that real estate transaction. The grave element of this case is the fact that a person who happened to be an accountant, sorry I keep hitting this microphone, who happened to be an accountant made serious and significant misrepresentations to our client on which he reasonably relied. The fact that he was an accountant in this particular instance is of no moment. What were those misrepresentations, those lies? He said in a real estate transaction that involved some $50 million worth of property, that he had performed all the necessary due diligence, that he had investigated the status of certain construction loans, that all those loans were in good standing. He said his search had indicated there were no loans on the properties that were subject to purchase. He indicated that our client would never have exposure beyond $250,000. He indicated that he had gone and secured a loan, that was going to be a global loan for the existing loans, so that the construction could proceed. He indicated there were interest reserves on the existing loans, and as I said, all in good standing. These are acts of a person dealing with a real estate transaction. It has nothing to do with accounting. The premise that's before you here is that the defendant takes the position that if an accountant performs certain acts, then those acts by their very nature become professional services within the meaning of the subject statute. We highly disagree with that. The case law we have cited to you, the statutes that we have cited, certainly just because someone's an accountant, certainly because someone's just a lawyer, doesn't mean that everything the accountant does is a professional accounting service, just like everything a lawyer does or a judge does is not a professional legal service. We submit that the cases that have been cited by the defendant in the lower court, and again here, don't stand for the propositions that the defendant maintains. We have distinguished those cases in our briefs. We have emphasized the fact that all of those cases dealt with some form of tax liability or tax issue. And I obviously could go through that, but it's all in the brief, and I think it's all there. The defendant completely ignores the fact that he himself, at his deposition, stated and testified that the conduct we're talking about, that we're complaining about, these misrepresentations, he didn't need to be an accountant to do them. He didn't have to examine appraisals. He didn't have to be an accountant to examine appraisals, to check on loans. He didn't have to be an accountant to say you had found a loan. He didn't have to be an accountant to say that you had conducted due diligence and you were completely familiar with the nuances and issues related to the real estate transaction. Certainly, that would create a question of fact if the defendant himself says that it did not amount to professional services under the statute. We also presented the affidavit of an expert, Mr. Hannon, who went through the facts as they are related in our statement of facts and indicated in his opinion that the acts of which we complained, which comprised the greater men of our lawsuit, did not amount to professional services under the Accounting Act. He went through it all. It's there for you to read. Clearly, it's a question of fact. The defendant's only response to this is it's not that they ignore it. They just say you shouldn't consider it. But they don't offer you, in my view, any good reason not to consider it. They have cited two cases, but those cases don't hold what they argue they hold. One talks about normally an expert can't give a legal opinion. And they argue that Mr. Hannon gave a legal opinion. That's not really true. What he did is he said this is not what accountants do when you look at what Mr. Luckey performed. There's no counter-affidavit, and the law requires this court to construe the affidavit literally in our favor because we have a summary judgment issue. We believe that the affidavit, in every respect, conforms with the Supreme Court's holding in Robidoux. I'm sure I'm mispronouncing that name. It's R-O-B-I-D-O-U-X. And that there's no reason not to consider that affidavit. And that certainly that affidavit creates at a minimum a question of fact. In the lower court, the defendant uniformly argued that whatever the accountant does, if it's a professional service, that the subject statute applies. That was the premise that was offered below. In the brief before this court, I raised the proposition or the supposition that if an accountant was an architect as well, he had an accountant's license and an architect's license. And he created plans for a building and his calculations were wrong and the building fell down. The fact that he was also an architect would never allow the architect statute to apply. For the first time in their brief, the defendant said, well, that's so easy that the judge wouldn't have any problem with it. They'd automatically know that the architect former statute should apply as opposed to the accountant statute. But what really happened there is they pulled back from their position in the trial court and they've conceded, in my view, that it's a question of fact. You have to look at the facts and you have to see if the trial fact would determine that the conduct performed by this accountant was in fact professional services under the statute. They rely heavily on two recent decisions. One is Bruton. That case had to do with whether or not an accountant privilege applied. They determined that estate planning was in fact professional services, accountant services. We have no argument with that because estate planning has to do with taxes. And depending on how you plan for the disposal of your property and your estate, taxes is an important question. So we have no argument with that. In the briefs, there's much discussion about Section 8.5 of the Accounting Act. Obviously, they say it applies and we say it doesn't. It comes down to, in my view, the fact that this conduct that was performed by the accountant had to do with a real estate transaction. The other case that they rely on is the Supreme Court decision of Evanston Insurance Company. I think that case supports our view because it says it had to do with a lawyer. And they held that it doesn't have to be a lawyer. It doesn't have to be a malpractice case against the lawyer to sue a lawyer for the statute, the lawyer statute to apply for the statute of limitations. But it doesn't encompass all conduct. It did not say, and never will say, that just because he was a lawyer, anything he did automatically kicked in the attorney statute of limitations. They said in that case it's the nature of the act or the omission. It's not the identity of the plaintiff or the defendant that controls. And I think that's important because here we're going to hear that this man was an accountant. And he was. And he was licensed under the Accounting Act. But we're dealing with conduct that had nothing to do with accounting. For those reasons that I again repeat, we believe the court should find as a matter of law that this conduct does not fall within the professional services section of the subject statute. But at a minimum, with everything here, you should find that there's a question of law and send it back to the trial court. And unless you have any questions of me. No, I don't. Thank you for your time. Thank you, Mr. Neville. Mr. Tillman. Good afternoon. Good afternoon. I please the court. Rich Tillman. I represent the defendants at Pelley's, Joe Ledtke and Ledtke and Associates. The issue to be decided on appeal is whether the accounting statute of limitations covers the plaintiff, Mark Ruane's, claims that have been asserted in this case. It's an issue of statutory construction. It's a question of law. And it's a question for the court. Mr. Ruane's claims in this case do arise from a real estate acquisition and development transaction in which Mr. Ledtke and a group of his clients invested in a series of limited liability companies that held ownership interests in various properties in Illinois, Indiana, and Michigan. Although Mr. Neville is on appeal, backtracking from the allegations that are actually made in the complaint, the allegations that are made in the complaint relate to Mr. Ledtke's failure to perform certain services. Those services are all related to the types of things that accountants do. And in fact, in the complaint, they specifically allege that they relied on Mr. Ledtke for his financial acumen, for his expertise. They don't say what his expertise and his financial acumen could be other than the fact that he was an accountant. So because the court needs to look to the nature of the claims and apply the statutory language to those claims, it's important to remember exactly what Ruane's actually complaining about here. He's complaining that Mr. Ledtke failed to conduct due diligence on a number of these single-purpose real estate entities that were going to be inquired in the transaction, failed to determine that there was no financing in place for some of them, failed to obtain financing for others, that Mr. Ledtke failed to conduct proper due diligence to determine whether there were liens that were encumbering the property, and he failed to advise Mr. Ruane about his potential liability from the transaction. Are you saying that those are all routine accounting services? I don't know if I would characterize them as routine accounting services, but certainly they're professional services that accountants perform all the time. Accountants are routinely hired to do financial due diligence on potential transactions, to look at the transactions and to advise their clients on the potential liabilities from those transactions. In this case, there's questions about whether Mr. Ledtke properly told them the value of the properties. These are all things that accountants get hired to do by their clients all the time. But didn't Mr. Ledtke bring this project to Mr. Ruane? Yes, yes. So I guess it doesn't appear to me anyway that Mr. Ruane hired Ledtke to look at this transaction, but that this transaction was brought to him by someone who happened to be his accountant. And so that what may be as routine as you could hire an accountant to do these things is perhaps true, but here I guess there's no reasonable way to look at that. Since he brought the transaction, Mr. Ruane wouldn't be hiring him to check those things out on something that's being brought to him, not that he is bringing to his accountant. Well, certainly he alleges that he relied on Mr. Ledtke to do that. He would have to do that if now we're getting to the merits of the claim, but he would have to have relied on Mr. Ledtke to perform these services for him if he was going to be bringing any of these claims for negligent misrepresentation, for fraud, et cetera. And he alleges in his complaint that he did. So whether Mr. Ledtke brought the transaction to Mr. Ruane or Mr. Ruane came to Mr. Ledtke and said, can you do this, is not the question. The question is, what does the statute cover and what were the services that were allegedly performed? And Mr. Ruane alleges that he performed these various services. Well, but you say that this is what you hire an accountant for, but I think that there is an issue of whether or not that's what Mr. Ruane hired Mr. Ledtke for. You say that there's no question of fact. I mean, he didn't say, I want to hire you to invest in this and to look at it. He said, hey, I have this investment opportunity. I mean, I don't know a lot of accountants that bring an investment opportunity to their clients. They review them once in a while or if they're asked, but this seems to be operating in the reverse. Well, the allegation is that they relied on him to perform these services. Again, whether Mr. Ledtke brought it to him or whether he brought it to Ledtke, the question is, what services was he providing for them that they were relying on him to perform and were those professional services under the accounting statute? So there's two requirements under the accounting statute. One, are the defendants registered as accountants? And two, are the services that give rise to the cause of action professional services? Both of those things, those requirements were met in this case, in fact. But they're not any professional services. They're professional accounting services. Is that correct? Well. I mean, haircuts are professional services. Sure, you could get into some crazy analogies that would get so far down the road that it wouldn't be professional services. It wouldn't be a professional service anymore. But the facts in this case are very specific about what they hired him to do, and they were professional services. There's no dispute about that. They acknowledge that in their brief and their trial report. I think the dispute is what's the nature of these professional services. They weren't for the purposes of what's my tax liability going to be for this, which is what I have hired you to be my accountant for, but he brought them and said, hey, I think this is a good investment. You can make some money on this, and I'm going to make sure there's no other liens. I don't know that that's the type of professional services you normally hire your accountant to do. Whether that's a typical thing that accountants are hired to do or not is, again, not what the statute provides for. It's an issue of statutory construction. We need to go on the plain language of the statute. Were they registered accountants? Were they performing professional services? If they weren't performing any services, if he just said, here's a potential transaction, decide what you want to do, then there would be no claim. The nature of the claim is specifically we relied on you to look into these things. We relied on you to know it wasn't tax liability, but we relied on you to tell us what our potential liability was, and you told us it was $250,000 when it wasn't. So they claim that they came to him based on his knowledge, based on his experience as an accountant and relied on him. From your brief, it says that Ruan entered into the transaction in reliance, not that he went to Letke and said, please do this, but because Letke said this is a good transaction and they had a relationship he relied on. I mean, I guess I think that where you said you could have examples and extrapolate and anything could be a professional service, I think that's the issue. What are the professional services here, you know, if you're licensed as an accountant, then everything you do for a client is a professional service under the Accounting Act? I don't know that every single thing you do for your client would be considered professional service. You know, there are too many hypotheticals out there to get into every single possibility, but certainly in this case, yes, these are professional services. He's doing due diligence on this transaction. He's advising them on their liability. He's looking into liens on the properties. He's arranging financing on the properties. And if you look at the Accounting Act, what the Accounting Act says are, quote, accountancy services is very, very broad. The Accountancy Act says that management, financial, or consulting services or compilations all fall within the definition of accountancy activities. So both the Illinois legislature and the Illinois courts have applied what it means to provide professional services as an accountant very broadly. You see that in multiple decisions, the Polsky case that we cite, the Cashman case that we cite, the Terrell case that we cite, several of those deal with investment transactions, not entirely dissimilar from this one where, in particular, in the Cashman case, what the accountant did was made statements in an investment prospectus about the nature of the investment, and the court applied the accounting malpractice statute of limitations to that case. So if you look at the Accounting Act and you look at those decisions, and then another case cited by Mr. Neville, the Brunton decision, again,  in fact, the court in that case said specifically, quote, it is common knowledge that auditing financial statements is not the only service that CPAs offer to the public. And relying on the Accounting Act and that broad definition that encompassed management, financial, or consulting services and compilations, the Brunton court said that even a state plan could, not could, actually does amount to an accounting service that would give rise to the accountant-client privilege over documents relating to estate planning services. So if this court were to narrow the statute of limitations applicable to accountants as Mr. Ruane proposes that it do, it would significantly cut back on the nature of the statute and allow for a significant amount of pleading around, which is, in fact, probably why the court, or why the Illinois legislature used that broad language about any professional service applied by accountants, because they didn't want malpractice claims to be replet as broad claims and therefore get around the statute of limitations. Or as he's trying to do on appeal, he didn't do it when he pled in the trial court, but trying to plead around, oh, this isn't really an accounting service anymore, now it's more of an investment-related service, and so now there's a question of fact about which statute applies. So it would really set a very different course for Illinois case law and diverge significantly from the accounting act if this court were to somehow narrow the definition of what it means to provide accounting services to only encompass consultation or advice on tax returns or financial statements. In fact, no Illinois court, nor the Illinois legislature, has ever done that. This is an entirely new argument that, well, I don't know if it's a new argument, but it's not supported by any authority that would narrow the scope of what accountants do, as Mr. Ruane proposes. Mr. Tillman, it was my understanding that the allegations were that Mr. Letke came to the plaintiffs, the plaintiff in this case, with a put-together plan where he said, I've already checked out and all of the financing is in place, and all of the appraisals have been done, and that all you're going to be at risk for is $250,000, and that he was approaching them with asking them to invest in something that was already essentially a done deal. I think that's a fair summary of what the plaintiff is claiming, yes. Okay. So does it matter when the accounting services were done? No. Relative to when he got involved with the plaintiff? No. Again, the question under the statute is, is he registered under the Accounting Act, and were the services that give rise to the allegations in the complaint professional services? That's the plain language of the statute. That's all that's required. Were the services that he performed for the plaintiff professional services? I kind of see where you're going. I think, again, if he didn't perform the services for Mr. Ruane, there wouldn't be a complaint at all, because there would be no misrepresentation of Mr. Ruane, there would be no duty owed to Mr. Ruane to provide accurate information. So clearly Mr. Ruane has to be claiming, as he did in his complaint, that he relied on Mr. Leckie as the one who knew about this transaction and who was making the statements about the various liens and financing and all that. But was he relying on him as his accountant, or was he relying on him as somebody who was coming to him with an investment where he said that he had all this information that was already there? He was relying on him as his accountant. He was his accountant. He alleges in the complaint he was his accountant. He alleges in the complaint that he came to Leckie because of his financial acumen, because of his expertise. So that's all right there. He's the master of his complaint, and that's what he said. The Evanston v. Riseboro case is another important case that I would point the court to. That's the Supreme Court case that recently came down. In that case they held that a very similarly worded statute applicable to claims against lawyers covered even claims by non-clients against the lawyer for breach of warranty and fraud. So, again, I think that speaks to the point that we were addressing previously as well about who came to who is not really the test here. Whether Mr. Ruane came to Mr. Leckie or Mr. Leckie came to Ruane, the question is the nature of the services that were allegedly performed. In the Evanston case, it wasn't even a lawyer-client relationship. It was a lawyer in an adverse party. And the court held that those claims for breach of warranty and fraud were still covered by the statute in that case that's basically the same exact language that's at issue here. Unless there's any further questions, I think that's all I have, and we just urge the court to affirm. Thank you, Mr. Tillman. Mr. Neville? The statement of facts in this case will establish that Leckie came to my client with this deal and said he had performed all the work. The reason he knew about it is there was an individual previously by the name of Rowden who was thinking of purchasing this property, and he had put everything together for that particular transaction, and it fell through. And he keeps saying that we hired Leckie to do this. Leckie came to my client with this, and he relied on his misrepresentations. That's what this case is about. Was he paying Leckie for services? Not for this. He invested in this himself. In my complaint, I do say that there were tax returns performed for Rowen unrelated to the real estate deal, and, of course, he was paid for that, but not for the real estate transaction. That was a deal he brought to Rowen and others and said, here's all the things I've done through all lies, and they relied on that and they went forward with it. I don't know where this broad statute's coming from, because there's no case that they cite that defines the accounting statute or the subject statute here is incredibly broad, as Mr. Tillman has expressed to you. What I think he's telling is if you look at the cases that they rely on, Polsky, Terrell, Cashman, and Federated, all of them deal with taxes. In Polsky, it was a fraudulent certifying of false financial statements. In Terrell, it was a suit against an accounting firm for preparing false tax returns in a financial statement. Cashman had to deal with repeated false statements in a perspective based on a financial statement. These are what accountants do. They deal with taxes. They don't tell you whether there are loans on property. They don't tell you that they had secured a loan they didn't secure. They don't tell you there's interest reserves on loans when there isn't. They don't tell you that appraisals of property have certain values when they don't. That's what this case is about, and that's really the point I wanted to make to you. If you have any questions, you may be happy to answer. Thank you for your time. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue, along with Justice Oldridge, a written decision as quickly as possible. The court will now stand in brief recess for a final case.